The STATE of Ohio, Appellee,

v.

LOPEZ, Appellant.

[Cite as *State v. Lopez* (1993), 90 Ohio App.3d 566.]

Court of Appeals of Ohio,
Lorain County.

Nos. 92CA005405, 92CA005406.

Decided Sept. 29, 1993.

*Gregory A. White,* Lorain County Prosecuting Attorney, for appellee.
*Hollace Weizel,* for appellant.

DICKINSON, Judge.

Defendant Richard Lopez has appealed from his convictions on two charges of aggravated burglary. He has argued (1) that the trial court incorrectly prevented him from confronting one of the prosecution's witnesses against him; (2) that the trial court incorrectly refused to permit him to introduce favorable evidence; (3) that the trial court incorrectly failed to limit the admissibility of other acts testimony to credibility issues; (4) that the trial court incorrectly interrupted jury deliberations; (5) that the trial court incorrectly denied his motion for acquittal; and (6) that his conviction was against the manifest weight of the evidence. We affirm his convictions because the trial court did not err in its evidentiary rulings or by interrupting the jury's deliberations in a manner that would lead to reversal of defendant's convictions and because defendant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

I

On November 13, 1991, defendant was indicted for the aggravated burglary of a home located at 2087 Taft Avenue, Sheffield Township, Ohio. Two BB guns, a rifle, and a .22 derringer were taken in that burglary, which occurred on July 18, 1991.

On January 28, 1992, defendant was indicted for the aggravated burglary of a home located at 2101 Grant Street, Sheffield Township, Ohio. A shotgun, a .9mm handgun, a .357 Magnum, and a quantity of ammunition were taken in that burglary, which occurred on September 20, 1991. Defendant's two indictments for aggravated burglary were consolidated before the trial court.

During February 1992, defendant's counsel contacted the prosecutor and informed him that defendant's younger brother, Miguel Garcia, had information exculpatory to defendant. Upon being interviewed, Garcia stated that he and an individual named Pete Comley had committed both burglaries and that defendant was not involved. Garcia testified for the defendant at trial and maintained his story that he and Comley committed the burglaries for which defendant was indicted.

The prosecutor interviewed Comley on March 9, 1992. Comley stated that he and Garcia committed the burglary at the Taft Avenue house. He did not, however, know about the BB guns taken in that burglary. Further, he said at that time that he did not participate in the burglary of the Grant Street house. He acknowledged having had in his possession the .357 Magnum taken from the Grant Street house, but said defendant had given it to him. He stated that defendant had not told him where he had gotten it.

At the end of the March 9 interview, Comley recanted and stated that he had not been involved in either burglary. He said that he had falsely confessed because of pressure from Garcia and Garcia's mother. (Garcia's mother, Stella Garcia, is also defendant's mother.)

The prosecutor spoke again to Comley by telephone later that same day and Comley reiterated that he had no involvement in either burglary. He also stated that defendant had told him that nothing would happen to him or Garcia if they took the blame for the Taft Avenue burglary. (Both Comley and Garcia were juveniles with no prior arrests.)

Comley and the prosecutor had still another conversation in which Comley said that, not only had he and Garcia committed the Taft Avenue burglary, they had committed the Grant Street burglary as well. He testified as a defense witness at trial and maintained that he and Garcia had committed both burglaries and that defendant was involved in neither.

Jason Hurn, a friend and schoolmate of Garcia and a friend of defendant, also testified as a defense witness at trial. He stated on direct examination that he had seen weapons from the burglaries in the possession of Garcia and Comley and denied that defendant was present at any time when he saw any of those weapons. On cross-examination, he admitted to having seen defendant hold the

.9mm handgun. He also admitted that he had, at one point, claimed to have seen Garcia and Comley break into one of the houses, although that was not true.

Gilbert Hale, a friend and schoolmate of Garcia, testified at trial on behalf of the state. He said that, during August 1991, defendant described to him having committed the burglary at the Taft Avenue home:

"[H]e had broken into a house, stolen some guns. He went through a screen, said the dog was barking and he got scared, but it quit and then he said it was all right after that."

Hale testified that defendant told him he had taken "a rifle and a .25 automatic" and that he (defendant) was looking for a clip for the .25 automatic.

Hale also described having been at the defendant's home during September 1991 and being shown a shotgun by defendant. According to Hale, defendant took the shotgun from under the porch of the house and handed it to him. The stock of the gun was split. Hale testified that, upon looking at the shotgun, he told defendant that it was broken and would not "fire right." Thereupon, according to Hale, defendant gave him the shotgun. (It was later identified as the shotgun stolen from the Grant Street house.) Hale also testified to having seen a .9mm handgun in Garcia's possession and a .357 Magnum in Comley's possession that same day.

Hale again visited defendant's home the following day. He testified that, at that time, defendant told him that he had broken into the Grant Street house and had "ginked" the shotgun, along with a .9mm handgun and a .357 Magnum. Hale explained that the term "ginked" meant stolen.

Defendant testified on his own behalf and denied involvement in either burglary. The jury found him guilty of both charges and he has appealed to this court.

## II

### A

Defendant's first assignment of error is that the trial court incorrectly prevented him from confronting one of the prosecution's witnesses against him in violation of Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he has complained because he was not permitted to review summaries of certain statements referred to by one of the state's witnesses during his direct examination.

Deputy Tim Mahar was involved in the investigation of both the Taft Avenue and Grant Street burglaries. Mahar testified that, during his investigation, he

obtained a signed, written statement from Gilbert Hale (who testified for the prosecution); that he obtained both a written and an oral statement from Pete Comley (who testified for the defendant and claimed that he and Garcia committed the burglaries); and that he obtained an oral statement from Jason Hurn (who testified for the defendant). Mahar stated that, during his investigation, neither Comley nor anyone else admitted committing the burglaries. The prosecutor then asked Mahar the following question and received the following response:

"Q. Now, was Gilbert Hale's statement supported by the statements you received from Pete Comley and Jason Hurn?

"A. Yes."

Defendant thereupon objected and the trial court sustained his objection. Following a discussion out of the presence of the jury, the prosecutor rephrased his question:

"Q. The statements that you received from Gilbert Hale, Pete Comley and Jason Hurn, were they consistent with your investigation?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled. You may answer.

"A. Yes, sir." [1]

During cross-examination of Mahar, defendant's counsel sought copies of the statements made to Mahar by Hale, Comley and Hurn. Following extensive discussion out of the presence of the jury, defense counsel was permitted to listen to a tape recording of an oral statement by Gilbert Hale and was supplied a copy of Comley's written statement. It is unclear whether he received a copy of Hale's written statement. At the close of the discussion, however, defendant's counsel stated that he was asking that summaries of oral statements made to Mahar by Jason Hurn and Pete Comley and included in police reports be turned over to him. The trial court ruled that he was not entitled to those summaries.

Defendant has argued that the trial court's refusal to direct the prosecutor to turn over the summaries of the statements by Hurn and Comley denied him his right to confront Mahar by cross-examining him about his testimony that the statements he received from Hale, Comley and Hurn were "consistent with his investigation." The trial court's ruling was not violative of defendant's constitutional rights.

---

1. Defendant has not argued that the trial court erred in overruling his objection and we do not consider that issue.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The Confrontation Clause is applicable to the states through the operation of the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas* (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. United States Supreme Court cases dealing with the Confrontation Clause fall into two broad categories: (1) cases involving the admission of out-of-court statements, and (2) cases involving restrictions imposed by law or by the trial court on the scope of cross-examination. *Delaware v. Fensterer* (1985), 474 U.S. 15, 18, 106 S.Ct. 292, 293, 88 L.Ed.2d 15, 18.

The Supreme Court dealt with the first category in *Pointer v. Texas, supra.* In that case, the state, at trial, introduced the transcript of a witness's testimony given at a preliminary hearing in which the defendant was not represented by counsel and did not have an opportunity to cross-examine. The witness had since left the state and was unavailable to testify at trial. The United States Supreme Court reversed the defendant's conviction, finding that he had been denied his right to confront the witness at issue.

*Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, was a case dealing with the second category. In that case, a crucial prosecution witness was on probation pursuant to an order of the juvenile court. The trial court, based upon state law protecting the anonymity of juvenile offenders, prohibited defendant from making any reference to the witness's juvenile record. The witness had identified defendant as one of three men he had seen in the vicinity of a location at which a stolen safe was discovered. The location at which the safe was discovered was close to the witness's home. The trial court's restriction prevented defendant from impeaching the witness by attempting to demonstrate that, because of his juvenile record, he feared the authorities might focus on him as a suspect. The Supreme Court held that the trial court's restriction on defendant's cross-examination violated the Confrontation Clause because defendant "was unable to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." (Emphasis *sic*.) *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

In attempting to categorize defendant's argument in this case, it is essential to recognize what he has not argued. He has not argued that he was denied his right to confront Hale, Comley and Hurn. Rather, he has argued in his brief that he was denied his right to confront Mahar:

"Cross-examination on the basis of an opinion is a traditional method of cross-examination. It was directed at exposing bias, prejudice and the credibility of Deputy Mahar. [Defendant] repeatedly raised the issue of the sufficiency of the

investigation, and the decision to target [defendant] as the suspect.  * * * Clearly, review of the summaries may have provided inconsistencies overlooked by the investigators, which were relevant to the case.  If such inconsistencies existed, the bias and prejudice of the investigators would be exposed.  * * * . When the trial court denied [defendant's] request to review the summaries of the statements, which formed the basis of Mahar's testimony, [defendant] was denied the right to cross-examine on a critical trial issue."

■ Defendant's argument does not fit into either of the Supreme Court's broad categories.  No out-of-court statement of Deputy Mahar was involved nor did the trial court directly restrict defendant's cross-examination of him in any way.  Defendant has argued that the trial court indirectly restricted his cross-examination of Mahar by not allowing defendant access to the summaries of two of the statements about which Mahar was permitted to testify.

In *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19, the Supreme Court noted that the Confrontation Clause does not guarantee a defendant the most effective means of cross-examination:

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  (Emphasis *sic*.)

In this case, the trial court specifically assured defendant that he could cross-examine Mahar about the statements made to him by Hale, Comley and Hurn and about his investigation.  Inasmuch as summaries of statements contained in police reports are not discoverable, however, the trial court refused to direct the state to turn the summaries of the statements of Hurn and Comley over to defendant.

■ The trial court's refusal was not a violation of the Confrontation Clause. The right to confront witnesses does not include a right of access to all material that might in some way assist in the cross-examination of a witness presented by the state.  Defendant in this case was not denied an opportunity for effective cross-examination ·of Mahar.  Accordingly, his rights pursuant to Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution were not violated.

■ Even if we were to conclude that defendant's right to confront Mahar was violated during his testimony, we would be constrained to further find that violation to have been cured before the jury deliberated in this case.  As noted previously, both Hurn and Comley testified for defendant.  As part of their testimony, they admitted having given statements to the state implicating defendant.  Accordingly, although defendant was not provided the summaries he desired, he did learn from Hurn and Comley the contents of their statements.

During its discussion of its denial of defendant's request for the summaries, the trial court specifically informed defendant that he could recall Mahar following the testimony of Hurn and Comley for the purpose of cross-examining him further regarding his testimony that the statements of Hale, Comley and Hurn were "consistent with his investigation." Defendant, however, did not take advantage of that opportunity.

Defendant's right to confrontation was not violated in this case. His first assignment of error is overruled.

## B

Defendant's second assignment of error is that the trial court incorrectly refused to permit him to introduce favorable evidence in violation of Evid.R. 801(D)(1)(b), Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he has complained about the time at which a certain audiotape was provided to his counsel and, further, has complained because he was prohibited from introducing prior consistent statements of certain witnesses.

Defendant's first argument in support of this assignment of error is related to an audiotape of the prosecutor's interview of Garcia in which Garcia stated that he and Comley had committed the burglaries for which defendant had been indicted. As noted previously, Garcia testified for the defendant at trial. During the cross-examination of Garcia, the prosecutor played two parts of the audiotape that contained statements inconsistent with his trial testimony. At the point the prosecutor began questioning Garcia regarding his prior statement, defendant's counsel requested that he be provided a copy of that statement. The trial court directed the prosecutor to deliver a copy of the statement, but not until the cross-examination of Garcia was complete.

Evid.R. 613(A) provides:

"In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel."

The primary purpose for adoption of Evid.R. 613(A) was to change the prior practice pursuant to which a witness could not be cross-examined about a prior inconsistent statement unless that statement was revealed to the witness before the questioning. 1 Weissenberger, Ohio Evidence (1992) 76, Section 613.2. In view of the change allowing questioning of a witness about a prior statement without showing that statement to the witness, the last clause, requiring the statement to be provided to opposing counsel upon request, was added to permit

the counsel offering the witness to protect the witness from "unfair insinuations or misleading questions." *Id.* at 77.

■ The trial court failed to correctly apply Evid.R. 613(A) in this case. Garcia's statement should have been provided defendant's counsel upon his request and before the prosecutor cross-examined regarding that statement. This error, however, was harmless beyond a reasonable doubt. *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035.

■ During Garcia's testimony about his claimed burglary of the Taft Avenue house, he stated that he and Comley had gone into the kitchen and the upstairs area of that house as well as the bedroom in which the stolen guns had been located. In the first segment of the audiotape that the prosecutor played, Garcia stated that he and Comley had not gone into any area of the house beyond the bedroom:

"Q. Did you go through anywhere else in the house?

"A. No.

"Q. Any reason why not?

"A. No."

We have reviewed the transcript of the tape and there was nothing unfair or misleading about the prosecutor's use of this segment. This segment related to the Taft Avenue burglary and was exactly what the prosecutor purported it to be: a statement by Garcia that he and Comley had not gone into any part of the house other than the bedroom in which the guns had been located. It was inconsistent with his testimony at trial.

The second segment of the tape played by the prosecutor related to Garcia's claim that he had buried one of the guns taken from the Grant Street house. At trial he testified that the only person who was present with him when he buried the gun was his nephew. The prosecutor played a segment of the tape in which Garcia stated that defendant was with him when he buried the gun:

"Q. Who was with you when you buried it?

"A. My brother.

"Q. Rickey Lopez?

"A. Yes."

Again, we have reviewed the transcript of the tape and there was nothing unfair or misleading about the prosecutor's use of this segment. This segment related to Garcia's claim that he buried the .9mm handgun from the Grant Street burglary and was exactly what the prosecutor claimed it to be: a statement that defendant, not Garcia's nephew, was present when he did so.

Although Garcia's statement should have been turned over to defendant's counsel upon his request, the failure of the state to do so was harmless beyond a reasonable doubt. Accordingly, that part of defendant's second assignment of error related to that failure is overruled.

Defendant's next argument in support of his second assignment of error is related to the same tape recording of Garcia's interview with the prosecutor. Upon his redirect examination of Garcia, defendant sought leave to play the entire statement to the jury. He argued that it was a prior consistent statement that he should be allowed to use to rehabilitate the witness. The trial court denied defendant's request.

Evid.R. 801(D)(1) provides, in part, that a prior consistent statement of a witness who testifies at trial is not hearsay if it "is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Of course, not all nonhearsay evidence is admissible. Even if the evidence about which defendant has complained was nonhearsay pursuant to Evid.R. 801(D)(1), the trial court's rejection of that evidence would not have been error unless that evidence was also relevant and otherwise admissible.

There is no doubt that the prosecutor maintained that Garcia had fabricated his testimony as a result of improper influence or motive. Despite that, however, the audiotape of his interview with the prosecutor was not within the coverage of Evid.R. 801(D)(1) and, therefore, was properly excluded as hearsay.

The Court of Appeals for Franklin County discussed the application of Evid.R. 801(D)(1) in *Motorists Mut. Ins. Co. v. Vance* (1985), 21 Ohio App.3d 205, 21 OBR 219, 486 N.E.2d 1206. It noted that the effect of the rule is not to make all prior consistent statements of a witness admissible:

"Obviously, the relevancy of many such statements would be suspect—an improbable story is not made more probable simply because it is repeated. What the rule permits is the rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story or falsified his testimony in response to improper motivation or influence, by admitting into evidence a consistent statement made by the witness prior to the time of the suggested invention or of the emergence of the motive or influence to invent or falsify, as tending to rebut the charge." *Id.* at 207, 21 OBR at 220–221, 486 N.E.2d at 1208.

The prosecutor argued that Garcia claimed to have committed the burglaries with which defendant was charged to protect defendant. At the time the prosecutor interviewed Garcia, defendant had already been indicted. Accordingly, the motivation for Garcia to fabricate his story had already arisen. The audiotape of the prosecutor's interview with Garcia, therefore, was not within the

coverage of Evid.R. 801(D)(1) and the trial court did not err in refusing to permit defendant to play it before the jury. That part of defendant's second assignment of error related to that refusal is overruled.

The defendant's final argument in support of his second assignment of error is that the trial court incorrectly sustained objections to questions his counsel asked Stella Garcia (defendant's mother) about a statement allegedly made to her by Garcia and to questions his counsel asked Jason Hurn about statements allegedly made to him by Garcia and Comley. Defendant has argued that those alleged statements were prior consistent statements which were within the coverage of Evid.R. 801(D)(1).

Garcia's alleged statement to his mother appears to have occurred after defendant was indicted. That statement, therefore, was not within the coverage of Evid.R. 801(D)(1) for the same reason that the audiotape of the prosecutor's interview with Garcia was not within that rule. It took place after the motivation arose for Garcia to fabricate his story.

The alleged statements to Hurn do appear to have occurred prior to defendant's indictment. Defendant did not, however, argue to the trial court that those statements were nonhearsay because of the application of Evid.R. 801(D)(1). Rather, he argued that they were nonhearsay because they were not being presented for the truth of the matters asserted:

"The testimony is offered not for truth. I don't believe it is hearsay because merely offering a statement to the effect that these statements were made by Miguel Garcia and Pete Comley to this witness, not for the truth, but just for the fact that there were statements made to this witness at the time that he showed him the gun."

These statements were offered for the truth of the matter asserted, that Garcia and Comley had obtained the guns shown Hurn by committing the burglaries for which defendant was being tried. The trial court, therefore, correctly rejected defendant's argument that the statements were not offered for the truth of the matter asserted.

Inasmuch as defendant has made an argument to this court that he failed to bring to the trial court's attention at a time when any error in the exclusion of the statements at issue could have been avoided, we could not reverse his conviction based upon that argument unless that exclusion was plain error. *State v. Self* (1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446, 454. A plain error exists when, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808.

Hurn's credibility was impeached by his admission that, while he testified he had never seen defendant with any of the stolen weapons, he had in fact seen him hold the .9mm handgun. His credibility was also impeached by his admission that he had claimed to have seen Garcia and Comley commit one of the burglaries, although he had not. In view of the significant damage that was done to Hurn's credibility, we cannot conclude that the outcome of this case would have been different if he had been permitted to testify that Garcia and Comley told him they had obtained the stolen weapons by committing the burglaries with which defendant was charged. Accordingly, defendant's second assignment of error is overruled.

## C

Defendant's third assignment of error is that the trial court incorrectly failed to limit the admissibility of other acts testimony to credibility issues in violation of Evid.R. 404(B); R.C. 2945.59; Section 10, Article I of the Ohio Constitution; and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. During his testimony, defendant admitted that he had participated in a separate burglary for which he had been prosecuted and convicted. He claimed, however, that his role in that burglary was limited to serving as a lookout. The prosecutor called another individual who had participated with defendant in that separate burglary as a rebuttal witness to impeach defendant's testimony that he served only as a lookout. Defendant has conceded that the rebuttal testimony was appropriate for purpose of attacking his credibility. He has argued, however, that the other acts testimony should have been limited to that purpose. Specifically, he has argued that the other burglary was not "sufficiently similar" to the crimes with which he was charged to be admissible for the purpose of showing "purpose, motive, scheme, plan or system, or absence of mistake or accident."

Evid.R. 404(B) provides that evidence of other crimes may be admissible as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." R.C. 2945.59 provides that such evidence may be received to show "motive or intent, the absence of mistake or accident on [defendant's] part, or the defendant's scheme, plan, or system in doing the action in question." "Neither the rule nor the statute contains the words 'like' or 'similar.'" *State v. Broom* (1988), 40 Ohio St.3d 277, 282, 533 N.E.2d 682, 690. The issue is not how similar the other crime was to those with which defendant was charged, but rather whether his commission of the other crime tended to show one of the things enumerated in the rule or statute.

The testimony about defendant's previous crime demonstrated that he had committed a similar burglary in the same neighborhood. Both the previous

burglary and the current burglaries were committed at night. Defendant had entered the home he previously burglarized by going through a window. One of the houses he was accused of burglarizing in this case was entered through a window. The trial court did not err in receiving testimony regarding defendant's previous crime as substantial evidence of "purpose, motive, scheme, plan or system, or absence of mistake or accident." Defendant's third assignment of error is overruled.

### D

Defendant's fourth assignment of error is that the trial court incorrectly interrupted jury deliberations, without inquiry from the jury, and told the jury that, in the court's opinion, a verdict was possible. After the jury had deliberated for approximately four and one-half hours, it sent a note to the trial court indicating that it was having a difficult time reaching a verdict:

"At this point, after several ballots, we have been unable to come to a unanimous decision. There are several jurors with a split decision or opinion for both sides. Please advise or can you give us any direction in this matter."

The trial court thereupon responded to the jurors in writing, instructing them to continue their deliberations "with an intent of arriving at a decision in accordance with your instructions." Without any further inquiry from the jury, the trial court had the jury returned to the court room and provided them the charge on jury deadlock that the Ohio Supreme Court approved in *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188. At the conclusion of that charge, the trial court added the following:

"At this stage of the game the Court feels—cannot feel in any way other than there is a possibility of reaching a verdict yet at this point and with that, the Court will again return you to your jury room to continue your deliberations."

Defendant has argued that the trial court should not have interrupted the jury's deliberations without further inquiry following its written response to the jury's earlier inquiry and that it was error for the trial court to include the above quoted passage in its instruction.

"It has always been recognized as the obligation of a court to assist within all reasonable limitations in bringing about a verdict of a jury." *Babbert v. State* (App.1936), 21 Ohio Law Abs. 273, 275. It was not error for the trial court to return the jury to the courtroom to further instruct it in an effort to assist it in reaching a verdict. It is unclear from the record how much time elapsed between the court's written response to the jury's inquiry and the return of the jury to the courtroom. That inquiry, however, alerted the trial court to the jury's concern about whether it could reach a verdict. Although it would have been preferable if

the trial court had returned the jury at the time of its written inquiry and instructed it at that point rather than first responding in writing, the procedure followed by the trial court did not prejudice defendant.

■ Similarly, it would have been preferable if the trial court had not added the above-quoted language after delivering the charge approved by the Supreme Court in *Howard*. In formulating the instruction it approved in *Howard*, the Supreme Court recognized several competing factors regarding giving a supplemental instruction to a divided jury and attempted to accommodate those factors. The supplemental instruction must not be coercive by stressing that the jury must reach a verdict. *Howard, supra*, 42 Ohio St.3d at 23–24, 537 N.E.2d at 192–194. It must, however, permit the trial judge to remind the jury of its purpose, namely, to reach a unanimous decision. It must be balanced and neutral. *Id.* at 24, 537 N.E.2d at 193. It cannot single out jurors in the minority and instruct them to reconsider their position. *Id.* It must encourage a verdict and it must be balanced, asking all jurors to reconsider their opinions. *Id.* at 25, 537 N.E.2d at 194.

■ When a trial court adds to the approved instruction, as occurred in this case, it risks destroying the balance struck by the Supreme Court. When an occasion arises in which it is necessary to provide the instruction approved in *Howard*, that instruction should be given as approved with no additions or omissions.

■ In this case, the trial court's additional statement following the presentation of the *Howard* charge did not destroy the balance of that charge. Accordingly, defendant's fourth assignment of error is overruled.

E

Defendant's fifth assignment of error is that the trial court incorrectly denied his motion for acquittal in violation of Crim.R. 29. Specifically, he has argued that there was not sufficient evidence to prove the offenses with which he was charged beyond a reasonable doubt.

■ In determining whether sufficient evidence was presented to prove an offense beyond a reasonable doubt, an appellate court must view the evidence in a light most favorable to the prosecution:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Included among the evidence in this case was the testimony of Gilbert Hale that defendant had confessed to him that he had committed the two burglaries with which he was charged. That testimony was sufficient, if believed, to prove beyond a reasonable doubt that defendant committed the offenses with which he was charged.

## F

Defendant's final assignment of error is that his conviction was against the manifest weight of the evidence. In considering whether a conviction is against the manifest weight of the evidence, an appellate court must:

"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011.

Defendant has argued that the jury lost its way in failing to accept the confessions of Garcia and Comley and failing to acquit defendant.

We cannot say that the jury lost its way in this case. As discussed above, there was sufficient evidence to support defendant's conviction. Further, the credibility of defendant's witnesses was severely damaged by the inconsistencies in their stories from one telling to the next and, in regard to Comley, the number of times his story changed completely. We cannot certify that a miscarriage of justice occurred in this case and, accordingly, defendant's final assignment of error is overruled.

## III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and REECE, J., concur.