Defendant-appellant, John Austin Edwards, appeals his convictions in the Lorain County Court of Common Pleas for aggravated murder and felonious assault. We affirm.
On August 9, 1991, the mutilated body of Marsha Blakely was discovered behind the Westgate Plaza shopping center in Lorain, Ohio. Ms. Blakely had been severely beaten before her death. Her injuries included twenty-five nonfatal stab wounds that ranged from one-quarter inch to one inch in depth, located randomly across her neck and upper torso, that were inflicted while she was still alive. Ms. Blakely had suffered nine broken ribs and her neck had been broken near the base of the skull. Physical evidence, including bloody tire prints near the body, indicated that these injuries were consistent with being struck by a car. A thirteen-inch gash had severed Ms. Blakely's windpipe and lacerated her jugular vein.
On September 25, 1991, Defendant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), an aggravated felony of the second degree. He was indicted for aggravated murder, a violation of R.C. 2903.01(A), in 1995. Defendant was found guilty of both charges following trial to a jury and was sentenced by the trial court to concurrent prison terms of twenty years to life for aggravated murder and three to fifteen years for felonious assault. Defendant timely appealed. He has assigned two errors for review.
 ASSIGNMENT OF ERROR I The trial court erred to the prejudice of [Defendant] when it allowed Lt. Taliano to testify concerning the hearsay statements of William Avery.
In his first assignment of error, Defendant has argued that the trial court improperly admitted Lt. Taliano's testimony describing statements made by witness William Avery during the course of Taliano's investigation of the case. Specifically, Defendant has maintained that Lt. Taliano's testimony was inadmissible hearsay because it bolstered the credibility of William Avery, but fell outside the perimeters of Evid.R. 801(D)(1)(b).
At trial, William Avery testified that on August 8, 1991, he accompanied Al Monday to the home of an acquaintance, Floyd Epps, after purchasing drugs from Monday. Avery stated that his understanding was that they were going to locate more drugs. He recalled that three other individuals, including Defendant, who Avery knew as "Shakim," were waiting outside when they arrived at Epps' home. Avery stated that Marsha Blakely was present in the home, and that Monday asked him to "beat her up" when they entered. Avery recognized Ms. Blakely from his youth and refused. He testified that the other four men then proceeded to beat Ms. Blakely for fifteen to twenty minutes until she lost consciousness. Avery recalled that after the beating, Defendant and his companions dragged Ms. Blakely from the home to their car and drove to Westgate Plaza. Avery and Monday followed. Avery testified that a fifth man was waiting behind the Plaza, and that this man repeatedly swung a long, shiny object at Ms. Blakely. Avery stated that he fled the scene shortly after arriving.
Lt. Taliano testified that his investigation reached a "dead end" by early September, and that he approached the Lorain County Prosecutor to establish a $2000 reward for information leading to the arrest and conviction of individuals involved in the murder. On September 11, 1991, Avery and his father, William Avery, Sr., contacted Lt. Taliano. Both Avery and Lt. Taliano testified with respect to the details of their initial meeting and the sequence of events that followed. At that time, Avery informed Lt. Taliano that he had witnessed Ms. Blakely's beating and identified the individuals involved. He did not mention that he had also been present behind Westgate Plaza. In a later statement, Avery stated that Monday told him, after the fact, that they had "knocked the junkie bitch off."[1] Avery also gave a deposition in which he relayed the same information.
As trial of one of the codefendants approached, Avery's father instructed him not to testify unless the prosecutor would pay another $10,000 for his testimony. The prosecutor declined, and Avery refused to testify. Avery stated that while jailed for contempt of court, he was threatened by Defendant. After this encounter Avery agreed to testify, but stated in his testimony that the statements he had made previously were false and that he had been motivated to lie by the reward money. As a result of this testimony and his prior statements that led to receipt of the reward, Avery was charged with perjury, contempt, and burglary. While jailed, he contacted an FBI investigator and informed him that he had been threatened by Defendant. Avery then spoke with Officer Resendez of the Lorain Police Department; rescinded his admission that his prior statements were false; and gave an account of the events of August 8, 1991, that was substantially equivalent to his testimony in this case. As a result of his cooperation with the investigation, Avery received $2000 reward money plus $1000 in relocation expenses. He also received funds from the court as a result of being detained as a material witness.
Avery testified on direct examination about the events that he witnessed and the changes in his prior testimony. He was also cross-examined extensively with respect to the possible financial motive for his cooperation and other motives that could have led him to change his testimony. Lt. Taliano also testified with respect to the content of each of Avery's statements.
The trial court admitted this testimony, over Defendant's continuing objection, under Evid.R. 801(D)(1)(b), which provides that an out-of-court statement is not hearsay when:
 [t]he declarant testifies at [the] trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]
This rule permits the rehabilitation of a witness whose credibility has been questioned by eliciting testimony of consistent statements that were made prior to the emergence of the improper influence or motive as tending to rebut a charge of fabrication or falsification. State v. Lopez (1993), 90 Ohio App.3d 566,578. Only prior consistent statements made before the existence of the improper influence or motive to falsify are contemplated by Evid.R. 801(D)(1)(b). State v. Nichols (1993),85 Ohio App.3d 65, 71.
In this case, Defendant alleged that Avery's description of the attack on Marcia Blakely was fabricated as the result of (1) the reward money offered by the prosecutor's office, and (2) his desire to be released from jail after he was imprisoned for perjury. Lt. Taliano did not testify as to consistent statements made by Avery prior to the existence of the possible improper motives. Specifically, Lt. Taliano did not offer a prior consistent statement from Avery as to his presence behind Westgate Plaza at the time of the murder. Instead, his testimony reiterated the version of events as described by Avery after his imprisonment. Similarly, Lt. Taliano did not provide evidence of a consistent statement made by Avery before the reward was offered. Indeed, the record indicates that Avery did not make a statement to Lt. Taliano prior to his response to the reward offer. Accordingly, Lt. Taliano's testimony did not fall within the scope of Evid.R. 801(D)(1)(b).
To the extent that Lt. Taliano testified as to out-of-court statements made by Avery, these statements cannot be defined as nonhearsay by Evid.R. 801(D)(1)(b). Assuming, arguendo, that Lt. Taliano's testimony constituted hearsay outside the scope of any exception provided by Evid.R. 803, the erroneous admission of hearsay evidence does not justify reversal where any error was harmless. State v. Carter (1995), 72 Ohio St.3d 545, 550. See, generally, Crim.R. 52(A). In this case, Avery testified before Lt. Taliano was called by the prosecution. His testimony described in detail each of the statements that he had made during the course of the investigation. Because the substance of Lt. Taliano's testimony was duplicative of Avery's own statements on direct and cross-examination, any error in admitting the testimony was harmless beyond a reasonable doubt. See State v. Williams (1988), 38 Ohio St.3d 346, 353; State v. Tramble (Jan. 27, 1999), Lorain App. No. 97CA006928, unreported, at 4. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II The trial court erred to the prejudice of [Defendant] when it sentenced [him] on both aggravated murder and felonious assault as the two charges are allied offenses of similar import.
The trial court withheld ruling on a motion for the state to sever the cases or, in the alternative, to elect which case to prosecute, until the conclusion of the trial. Defendant was convicted of both charges, and the trial court proceeded to sentencing without merging the charges. He has argued that the felonious assault and aggravated murder are allied offenses of similar import and, therefore, that the trial court erred in failing to merge the convictions for the purposes of sentencing. Because the record does not indicate that Defendant objected to the court's omission, this court will only recognize his later objections to the extent that the trial court's action constituted plain error. State v. Campbell (1994), 69 Ohio St.3d 38, 40-41; Crim.R. 52(B).
R.C. 2941.25(A) provides:
 Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
The determination of whether two offenses are of similar import is limited to an objective analysis of the statutory provisions at issue to determine whether the elements of the charged offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Blankenship (1988), 38 Ohio St.3d 116, 117. This statutory analysis is performed in the abstract, focusing solely on the elements of the offenses charged without reference to the facts of the particular case. State v. Rance (1999), 85 Ohio St.3d 632, paragraph one of the syllabus. If the elements of the statutes do not correspond to this degree, "the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id. at 636.
If the court determines that two offenses are allied offenses of similar import, it must proceed to examine the facts of the case to determine whether the crimes were committed separately or with a separate animus. State v. Blankenship,38 Ohio St. 3d at 117. If offenses of similar import are committed separately or with a separate animus, a defendant may be punished for both. State v. Rance, 85 Ohio St.3d at 636; R.C. 2941.25(B).
Assuming, arguendo, that aggravated murder, pursuant to R.C.2903.01(A) and felonious assault, pursuant to R.C. 2903.11(A), constitute allied offenses of similar import,[2] it is clear in this case that Defendant's actions constituted separate and distinct crimes. The evidence presented at trial indicated that Ms. Blakely was beaten by four men, including Defendant, in Floyd Epps' home, and that neither of her potentially fatal injuries was inflicted at that location. She received twenty-five nonfatal stab wounds to the neck and torso and multiple broken bones prior to her death. Testimony indicated that the stab wounds were inflicted at the murder scene behind Westgate Plaza and that Ms. Blakely's broken bones were consistent with an automobile impact at the scene. Physical evidence also indicated that her throat was slashed behind Westgate Plaza. Given that the initial beating and Ms. Blakely's murder were separated by time, location, and causation, they are separate offenses for which Defendant could face conviction and sentence pursuant to R.C. 2941.25(B). Defendant's second assignment of error is overruled.
Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
___________________________ LYNN C. SLABY
FOR THE COURT
BAIRD, P. J.
WHITMORE, J.
CONCUR
[1] Avery acknowledged on direct and cross-examination, and Lt. Taliano confirmed, that Al Monday had not made this statement.
[2] Because the convictions in this case clearly arise from separate conduct, we express no opinion at this time with respect to whether R.C. 2903.01(A) and 2903.11(A) constitute allied offenses of similar import.