DECISION.
What started in August 1996 as a routine citation of three women for obstructing the sidewalk resulted in a large confrontation between residents of an Avondale neighborhood, including defendant-appellant Gerry Rolley, and the Cincinnati Police. On August 19, 1996, Officer Brian Little was patrolling along Burnet Avenue when he approached three women standing on the sidewalk and asked them to disperse. One of the women, LaShawnda Ross, refused to move, and when Officer Little said he was going to place her in custody, she attempted to flee. Two other police officers patrolling in that area, Doug Depodesta and Dennis Cloud, stopped to assist Officer Little. After Officers Depodesta and Little apprehended Ross, a large crowd started to form. The crowd was apparently screaming and yelling at the officers. At that same time, Ross's mother jumped onto Officer Depodesta's back, putting a fork to his throat. Officer Cloud assisted Officer Depodesta in restraining the mother, and, in an attempt to control the crowd, Officer Little sprayed Mace and called for additional assistance. Officers Paul Neudigate and Maris Herold arrived in response to that call.
As the altercation developed, Gerry Rolley walked across Burnet Avenue and came into contact with the police. While it is undisputed that Rolley hit some or all of the officers, there is no agreement about what provoked Rolley's actions. The state asserts that Rolley initiated the confrontation, but Rolley maintains that he was acting in self-defense.
Officer Little testified on behalf of the state. According to him, as the crowd of about 100 people formed on Burnet Avenue, Rolley stood out as one of its more vocal members. Specifically, Officer Little stated that Rolley was yelling and screaming at the officers, and that Rolley started to walk towards the officers in a threatening manner. Officer Little stated that he in turn warned Rolley that any continued threat of violence would be met with the use of Mace. After the warning, Rolley reportedly said, "If you spray me with that mace [sic], I'm going to kick your ass." At that point, Officer Little advised Rolley that he was being placed under arrest. The officers testified that Rolley responded by assuming a fighting stance, and that his reaction prompted Officers Little and Herold to spray Mace at him. After the Mace was sprayed, Rolley started to hit any officer who attempted to restrain him. Officer Little testified that Rolley punched him above the eye and kneed him in the ribs. Officer Herold claimed that Rolley struck her in the side of the head and knocked her unconscious. Officer Depodesta testified that when he attempted to subdue Rolley with a nightstick, Rolley hit him in the head. According to Officer Neudigate, Rolley punched him as he tried to assist his colleagues. After hitting the officers, Rolley ran to a laundromat, where Officers Little, Neudigate, and Depodesta placed him under arrest.
In contrast, Rolley testified that he was simply watching the confrontation between the women and the officers when Officer Depodesta asked him to retrieve a baby stroller. Rolley stated that he got the baby stroller and took it up on a porch. As he started to walk back into the street, Rolley testified that he heard the police say, "That's the one," but that he continued to walk across the street, not realizing that the police were talking about him. Rolley stated that he was then sprayed with Mace and hit with a stick. He claimed that, while the police were hitting him, he "was swinging [his] arms pretty wildly" in an attempt to defend himself against the officers. Rolley denied saying anything to the officers about what would happen to them if they used Mace.
Janet Evans, who was in the crowd that day, testified that she observed Rolley do something with a stroller and then turn back to walk across the street, when an officer pushed him from behind. Evans corroborated Rolley's testimony, stating that she never heard Rolley exchange any words with the officers. Another witness present in the crowd, Mildred McHenry, also testified on Rolley's behalf. She stated that she heard an officer tell Rolley to move along and that the officer sprayed Mace when Rolley turned around. McHenry maintained that she saw Rolley "swing" at the officer who had sprayed the Mace, and that she witnessed the officers hitting Rolley while he was standing by the laundromat.
Officers Little, Depodesta, Neudigate, and Herold were all taken to the hospital following the altercation and treated for minor injuries. Rolley was also taken to the hospital and treated for injuries.
Rolley was indicted for aggravated riot (count one), inducing panic (count two), and assaulting Officers Depodesta, Little, Herold, and Neudigate (counts three through six). The first of two jury trials commenced on November 13, 1997. The jury found Rolley not guilty of aggravated riot, but it remained undecided on the other charges. The second trial was conducted in June 1998. After that trial, the jury found Rolley guilty of assaulting the four police officers (counts three, four, five, and six) but not guilty of inducing panic (count two). On June 30, 1998, the trial court sentenced Rolley to concurrent one-year prison terms for the four assaults. In this appeal from the judgment of conviction, he presents eight assignments of error. Because we conclude that these assignments lack merit, we affirm.
In his first assignment of error, Rolley alleges that he was denied his right to a fair trial as secured by theFourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. Specifically, Rolley complains of seven instances of prosecutorial misconduct occurring either during the presentation of evidence or during closing argument.
Generally, prosecutorial misconduct will not provide a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial.[1] The test for determining prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if they were, whether they prejudicially affected substantial rights of the accused.[2]
Rolley argues that the prosecution (1) made improper law-and-order arguments; (2) argued facts not in evidence; (3) denigrated defense counsel; (4) gave opinions with respect to the truthfulness of witnesses; (5) denigrated him personally; (6) provided answers for police witnesses; and (7) discussed "a penalty in the guise of telling the jury to disregard it." Of these seven alleged improprieties, defense counsel only objected in two instances. Defense counsel objected to a statement made during closing argument about La Shawanda Ross's criminal record, and counsel also objected to the prosecution "feeding" answers to Officer Depodesta on direct examination. Though we do not believe that these two incidents involved improper conduct, even if we assume otherwise, we remain unconvinced that they prejudicially affected any substantial rights.
The trial court sustained objections in both cases, and at the close of the evidence it admonished the jurors that they were not to "speculate as to why the Court sustained [an] objection to any question or what the answer to such a question might have been." Accordingly, in these two instances, Rolley was not denied a fair trial.
As for the remaining instances of alleged misconduct, which were not objected to at trial, we are similarly unpersuaded that there are grounds for reversal. Where the alleged misconduct occurred without objection at trial, no claim of error may be recognized on appeal unless it may be said, from the tenor of the prosecutor's conduct during the whole trial, that there was plain error.[3] "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise."[4] We are mindful that "the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a miscarriage of injustice."[5]
The most significant issues presented in this assignment arise from the prosecution's alleged denigration of defense counsel and Rolley during closing argument. On the record before us, we cannot say that, but for these alleged improprieties, either individually or in the aggregate, the outcome of Rolley's trial would have been otherwise.[6] In the absence of any prejudicial unfairness, Rolley's first assignment of error is overruled.
In his second assignment of error, Rolley maintains that he was denied his right to confrontation under the Sixth
and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. His basic argument is that, where credibility is an in a case, the trial court should permit defense counsel the opportunity to inquire on cross-examination about whether witnesses have lied in their testimony.
The Confrontation Clause of the Federal constitution and its Ohio counterpart guarantee a defendant the right to confront witnesses.[7] The purpose of this right is to provide the opportunity to cross-examine those witnesses who appear against the defendant.[8] While the Confrontation Clause generally guarantees an opportunity to engage in effective cross-examination, it does not permit "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[9] Cases dealing with the Confrontation Clause generally fall into two categories: (1) cases involving the admission of hearsay testimony, and (2) cases involving restrictions on the scope of cross-examination.[10]
In essence, Rolley's argument is that the trial court impermissibly sustained the prosecution's objection to a question posed while defense counsel was cross-examining Officer Neudigate. Initially, we note that Rolley does not argue that he was unconstitutionally denied the opportunity to cross-examine Officer Neudigate. Rather, Rolley asserts that he was denied the opportunity to challenge the veracity of the other officers' testimony by seeking Officer Neudigate's opinion as to whether those officers were lying. The testimony at issue reads as follows:
 [Defense Counsel:] So it would be your testimony that you didn't see Officer Depodesta apply eight to ten raking blows or raking strikes prior to being hit. Is that your testimony, that he did not do that prior to being hit?
 [Officer Neudigate:] That's correct. Mr. Rolley was not assaulted or touched prior to him striking, assaulting four police officers. Any blows that were administered to Mr. Rolley were subsequent to his actions.
 [Defense Counsel:] You were sitting here and know to tell the truth and nothing but the truth and if any other officer said that, he is lying, is that correct?
[Prosecutor:] Objection.
The Court: Sustained.
Evid.R. 608(A) permits impeachment by opinion and reputation evidence of character. Admissibility determinations and the scope of cross-examination, however, are generally subject to the sound discretion of the trial court.[11] We will not reverse the trial court's decision absent an abuse of discretion.[12] An abuse of discretion "`connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (Citations deleted.)'"[13] Trial courts, therefore, retain wide latitude to impose reasonable limits on cross-examination.[14]
After reviewing the record, we cannot say that the trial court abused its discretion in sustaining the prosecution's objection. Rolley was accorded the opportunity to confront all of the testifying officers at trial about the event and inquire into their propensity for truthfulness on cross-examination. Therefore, Officer Neudigate's opinion as to whether the other officers were lying would have been, for the most part, redundant testimony. And, if there were in fact actual discrepancies in the officers' testimony, the trier of fact was perfectly capable of making the necessary credibility determinations without Officer Neudigate's opinion.[15]
As a result, we hold that hold that, because Rolley was given his constitutionally protected right to cross-examine Officer Neudigate and because the trial court did not abuse its discretion in limiting the testimony of Officer Neudigate, there was no impingement on Rolley's right of confrontation guaranteed under the United States and Ohio Constitutions. Accordingly, Rolley's second assignment of error is overruled.
In his third, fourth, and fifth assignments of error, which Rolley argues together, he alleges that the judgment was based on insufficient evidence, that it was against the manifest weight of the evidence, and that the trial court erred by denying his Crim.R. 29 motions for acquittal.
To reverse a conviction for insufficient evidence, we must be persuaded that, after viewing all of the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[16] The relevant inquiry for reviewing the denial of a Crim.R. 29 motion is the same as the inquiry for sufficiency.[17] To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[18] However, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[19]
Rolley was charged with and convicted of four counts of assault in violation of R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." At trial, Rolley raised the affirmative defense of self-defense.[20] Self-defense is an exception to the general rule that a person must avoid using force to injure another person. To establish self-defense, the defendant must prove by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the dispute; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3) he did not violate any duty to retreat from or avoid the danger.[21]
When evaluating whether a defendant appropriately acted in self-defense, the jury must consider the entire situation and determine whether the defendant's actions were reasonable under the circumstances.[22]
Here, Rolley asserts that he was merely acting in self-defense against a "lawless attack," and that the state failed to prove beyond a reasonable doubt that he knowingly caused physical harm to the police officers. After reviewing the entire record, however, we conclude that there was sufficient evidence presented to permit the jury to find that each element of the assault charges had been proved. The officers each testified that Rolley hit them, and Rolley admitting to hitting the officers when he was "swinging" his arms in "self-defense." Further, the jury could have reasonably rejected Rolley's claim of self-defense. According to the officers' testimony, Rolley himself brought on the confrontation by inciting the crowd and by acting in a confrontational manner towards the officers with his physical and verbal threats. Moreover, the jury could have found that Rolley had other means to avoid the use of force. Accordingly, the trial court's judgment was supported by sufficient evidence.
Further, we cannot say that the jury lost its way and created a manifest miscarriage of justice. The evidence was conflicting and the jury was in the best position to decide whom and what to believe. And, sitting as a "thirteenth juror," we do not disagree with its assessment of the testimony. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[23] Here, the evidence does not weigh heavily against a conviction, and we cannot say as a matter of law that the jury improperly weighed the evidence. Accordingly, we hold that the convictions were not against the manifest weight of the evidence, and we hereby overrule Rolley's third, fourth, and fifth assignments of error.
In his sixth assignment of error, Rolley contends that he received ineffective assistance of counsel, in violation of theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. He maintains that his counsel was ineffective in failing to object to portions of the prosecutors' closing argument; in failing to object to the introduction of the police officers' medical records; and in questioning him about a prior criminal-trespass charge.
To establish ineffective assistance of counsel, an appellant has the burden of demonstrating that his counsel's representation fell below an objective standard of reasonableness and resulted in prejudice.[24] To prevail in this case, Rolley must convince us that his counsel committed serious errors that deprived him of his Sixth Amendment right, and that those errors caused such prejudice that he was deprived of a fair trial.[25] In doing so, he must overcome the presumption that, under the circumstances, his counsel's actions constituted sound trial strategy.[26]
The record reveals that defense counsel represented Rolley in a competent manner. The first instance of ineffective assistance cited by Rolley involves his counsel's failure to object to portions of the prosecutors' closing argument that we have already discussed in response to his first assignment of error. As we have noted, the prosecutors' argument did not deprive Rolley of a fair trial. Since there is no reasonable probability that the outcome of the trial would have been different in the absence of the argument, and in view of all the evidence presented against Rolley, we hold that counsel's failure to object did not rise to the level of ineffective assistance. Rolley's second claim, that he was prejudiced by counsel's failure to object to the admission of the police officers' medical records, is not substantiated by the record. There is quite simply nothing to indicate that the trial would have ended differently but for the admission of the records. As a result, we cannot say that defense counsel's failure to object to the records prejudiced Rolley. The remaining claim, which relates to counsel's references to Rolley's prior criminal record, is not well taken because Rolley has not shown that the references were not in accordance with sound trial strategy. Accordingly, we overrule the sixth assignment of error.
Rolley's seventh assignment of error posits that inadmissible evidence was admitted at trial in violation of Rolley's right to due process under the Fourteenth Amendment to the United States Constitution. Specifically, Rolley alleges that he was denied a fair trial because of the individual and cumulative effect of admitting (1) a letter and testimony from Burnet Avenue property owners concerning the authority given to the police to enter their property; (2) medical records of the four injured police officers; and (3) part of the information provided by the prosecutor during discovery. Rolley's brief, however, cites no case law supporting his contentions. Initially, we emphasize that the admissibility of relevant evidence is to be determined through the exercise of the trial court's sound discretion.[27] With that concept in mind, we address the allegations.
Rolley first maintains that evidence from residents concerning the conditions along Burnet Avenue was irrelevant. Evid.R. 401 defines relevant evidence in the following manner:
 evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
 In addition to the assault charges on which Rolley was convicted, he was also charged with inducing panic. The evidence relating to the neighborhood conditions was, at least, relevant to the inducing-panic charge. Accordingly, we cannot say that the trial court abused its discretion in admitting the evidence.
Rolley also maintains that the hospital records were impermissible hearsay because they were not authenticated. Our review of the record reveals that defense counsel failed to object to the alleged hearsay at the time of the trial. We reiterate that, in the absence of an objection, a reviewing court will not consider an alleged error unless it rises to the level of plain error.[28] Here, we determine that no plain error occurred because there is no indication that the trial would have ended differently but for the alleged error. Even if the alleged hearsay were to be removed from the record, the remaining evidence would amply sustain Rolley's conviction. The four police officers each stated that Rolley hit them, and Rolley admitted to hitting the officers; therefore, the medical records provided only cumulative evidence of the injuries inflicted by Rolley. Accordingly, we conclude that their admission did not constitute plain error.
Finally, Rolley contends that the trial court erred in admitting, over objection, part of the material provided by the prosecution during discovery. Nothing in Rolley's brief, however, explains why the trial court erred in admitting this evidence. Once again, we emphasize that the trial court retains broad discretion in admitting relevant evidence. Because we cannot say that this evidence was not relevant, we must conclude, in the absence of any further argument by Rolley, that the trial court did not err in admitting this evidence. There being no error to recognize, either individually or collectively, Rolley's seventh assignment of error is overruled.
Rolley's final assignment of error seeks a reversal of his conviction on the basis of the cumulative and incremental effect of the various errors allegedly committed at his trial, which, in his view, deprived him of a fundamentally fair trial. Having reviewed all of Rolley's assignments of error and having found no prejudicial error, we hold that there is no cumulative error to recognize in this case. Accordingly, Rolley's eighth assignment is overruled.
The judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., Sundermann and Winkler, JJ.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] See State v. Lott (1990), 51 Ohio St.3d 160, 166,555 N.E.2d 293, 301; State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768, 793.
[2] See State v. Lott, supra, at 165, 555 N.E.2d at 300; Statev. Maurer, supra; State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883, 885.
[3] See Crim.R. 52(B); State v. Slagle (1992), 65 Ohio St.3d 597,604, 605 N.E.2d 916, 924-925.
[4] State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894, 899.
[5] State v. Cooperrider (1983), 4 Ohio St.3d 226, 227,448 N.E.2d 452, 453.
[6] See Slagle, supra, at 604-605, 605 N.E.2d at 925.
[7] See Delaware v. Van Arsdall (1986), 475 U.S. 673, 678,106 S.Ct. 1431, 1435; State v. Self (1990), 56 Ohio St.3d 73, 76,564 N.E.2d 446, 450; State v. Eastham (1988), 39 Ohio St.3d 307, 308,530 N.E.2d 409, 410.
[8] See Delaware v. Van Arsdall, supra; State v. Self, supra.
[9] State v. Lopez (1993), 90 Ohio App.3d 566, 575,630 N.E.2d 32, 38, quoting Delaware v. Fensterer (1985),474 U.S. 15, 20, 106 S.Ct. 292, 294.
[10] See Delaware v. Fensterer, supra, at 18, 106 S.Ct. at 294;State v. Lopez, supra, at 574, 630 N.E.2d at 37.
[11] See O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163,407 N.E.2d 490, 493.
[12] See id.; State v. Slagle, supra, at 605,605 N.E.2d at 925-926.
[13] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
[14] See Delaware v. VanArsdall, supra, at 679,106 S.Ct. at 1435.
[15] See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
[16] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[17] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 263,381 N.E.2d 184, 185.
[18] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546-547.
[19] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
[20] See State v. Martin (1986), 21 Ohio St.3d 91, 93,488 N.E.2d 166, 167.
[21] See State v. Robbins (1979) 58 Ohio St.2d 74,388 N.E.2d 755, paragraph two of the syllabus.
[22] See e.g., State v. Smith (1983), 10 Ohio App.3d 99, 100,460 N.E.2d 693, 696.
[23] See State v. DeHass, supra.
[24] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
[25] See Strickland v. Washington, supra; State v. Bradley,supra, at 141-142, 538 N.E.2d at 379.
[26] See Strickland v. Washington, supra, at 689,104 S.Ct. at 2065; State v. Bradley, supra, at 142, 538 N.E.2d at 379-380.
[27] See Rigby v. Lake County (1991), 58 Ohio St.3d 269, 271,569 N.E.2d 1056, 1058.
[28] See Crim.R. 52(B); State v. Slagle, supra.