DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Vinton County Common Pleas Court judgment of conviction and sentence. The jury found William W. Mulhern, Jr., defendant below and appellant herein, guilty of aggravated arson in violation of R.C. 2909.02 (A)(2), and tampering with evidence in violation of R.C. 2921.12 (A)(1). The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR
 "THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT[.]"
SECOND ASSIGNMENT OF ERROR
 "THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF THE NATURE OF MULHERN'S PREVIOUS ARSON CONVICTION TO BE PRESENTED TO THE JURY IN VIOLATION OF EVIDENCE RULES 403, 404(B) AND R.C. § 2945.59[.]"
FOURTH ASSIGNMENT OF ERROR
 "DEFENDANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE INSOFAR AS HE FILED [sic] TO RENEW THE OBJECTION OF EVIDENCE OF DEFENDANT'S PRIOR ARSON CONVICTION AT TRIAL[.]"
FIFTH ASSIGNMENT OF ERROR
 "THE `DYNAMITE CHARGE' GIVEN BY THE TRIAL COURT, IN CONJUNCTION WITH THE ADMISSION OF PRIOR ACTS TESTIMONY, LED TO A COMPROMISE VERDICT UNSUPPORTED BY THE RECORD AND IN VIOLATION OF AMENDMENTS 5 AND 14 OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION [sic] OF THE OHIO CONSTITUTION."
SIXTH ASSIGNMENT OF ERROR
 "THE TRIAL COURT FAILED TO FULFILL THE SENTENCING REQUIREMENTS OF IMPOSITION OF THE MAXIMUM AND CONSECUTIVE SENTENCES PURSUANT TO R.C. CHAPTER 2929[.]"
 {¶ 2} A brief summary of the facts pertinent to this appeal is as follows. On the morning of June 2, 2001, a fire broke out in an apartment bedroom at 204 West Main Street in McArthur. Firefighters extinguished the fire and, in the process, discovered the charred remains of the tenant, Jonna Hollingshead, lying in bed. Investigators found a wallet underneath her body that contained a driver's license and other identification that belonged to appellant. Later in the day, appellant admitted that he had been in the apartment building that morning, but claimed that he left between 6:30 and 7 AM.
 {¶ 3} On June 14, 2002, the Vinton County Grand Jury returned an indictment that charged appellant with: (1) aggravated murder in violation of R.C. 2903.01(D); (2) two counts of aggravated arson in violation of R.C. 2909.02(A)(1); (3) one count of aggravated arson in violation of R.C. 2909.02(A)(2); (4) tampering with evidence in violation of R.C. 2921.12(A)(1); and (5) gross abuse of a corpse in violation of R.C. 2927.01(B). Appellant pled not guilty and the matter came on for a jury trial over several days in December of 2001.
 {¶ 4} The evidence adduced at trial revealed that the fire was not accidental. Kenneth Crawford, an arson investigator for the State Fire Marshall's office, as well as experts James Churchwell of "Churchwell Fire Consultants," and Harold Frank, a forensic engineer, all testified that the fire was not caused by electrical problems or any malfunctioning appliance.[2] Although investigators found no traces of an accelerant at the scene, Crawford and Churchwell both opined that someone deliberately set the fire and that the ignition source was at the foot of the decedent's bed.
 {¶ 5} The evidence concerning the decedent's death was much less conclusive, however. Dr. Carl Griever, the acting Vinton County Coroner, examined the charred remains but could not determine a cause of death. He then sent the body to Franklin County for an autopsy.
 {¶ 6} Calvin McGuire, a toxicologist at the Franklin County Coroner's office, testified that he performed blood tests on the remains. McGuire found traces of various drugs, but lower levels of carbon monoxide than would be expected for someone who had died in a fire.[3] Dr. Patrick Fardal, a forensic pathologist, testified that he performed an autopsy. Dr. Fardal found no soot in the decedent's airways and noted that her system tested negative for "monoxide" and "cyanide." Dr. Fardal stated that those substances would have been present had the decedent inhaled smoke or any other "fire materials." Thus, Dr. Fardal concluded, the decedent died before the fire started. He could not, however, determine the precise cause of death. Dr. Fardal also found no signs of trauma, no indication of natural disease and normal tissue samples. While he could not rule out sudden cardiac arrhythmia or some similar condition, Dr. Fardal listed the cause of death as "undetermined" which, he explained, is a relatively rare occurrence in autopsies.
 {¶ 7} Evidence was also adduced to show that (1) appellant was at the apartment building shortly before the fire began; (2) the wallet found underneath the decedent's body belonged to appellant; and (3) appellant possessed a "butane cigarette lighter" at the time the fire began. Appellant admitted to Kenneth Crawford that the lighter belonged to him and he gave the lighter to Crawford during his interview. Additionally, both Crawford and Joseph Drew, the McArthur Chief of Police, testified that appellant admitted being at the apartment building until about 6:30 to 7 AM. Several other witnesses stated that appellant was among a group of people who had been drinking alcohol at the Hotel McArthur the previous night, and then returned to the apartments after the establishment closed.
 {¶ 8} The defense did not counter this evidence directly, but did introduce evidence to show alternative explanations for the fire. For instance, several witnesses testified that the decedent chain smoked and had "carpal tunnel" syndrome with a tendency to drop objects (to suggest that a cigarette caused the fire). Others noted that the decedent liked candles and, on occasion, let them burn all night. Other testimony revealed that the decedent's boyfriend, Terry Johnson, trespassed on the crime scene the morning after the fire (to suggest that Johnson may have "planted" appellant's wallet). Gail Matteson, a friend of the decedent, testified that Johnson and the decedent always fought with each other. Robert Lusk related that he heard Johnson threaten the decedent. Ginger McKinney, a Hotel McArthur employee and a friend of the decedent, testified that the decedent had even threatened to burn down the apartment building herself.
 {¶ 9} After the jury began to deliberate, it notified the court that the members could not agree on a verdict. The court informed them that deliberations required patience, and directed them to discuss the evidence amongst themselves and try to reach a unanimous verdict. Later, another message from the jury declared that they had been "dead locked for 6 hours" and asked if any alternatives existed. The court called them into the courtroom, gave additional instructions and directed them to continue to deliberate to try and reach a unanimous decision on all counts. Eventually, the jury found appellant not guilty of murder, not guilty on two of the three aggravated arson charges, guilty on the remaining aggravated arson charge and guilty on the tampering with evidence charge.[4]
 {¶ 10} The matter came on for sentencing on January 30, 2002. The trial court noted that appellant committed these offenses while he was on "community control" from a prior arson conviction and that his "criminal behavior" had become "increasingly severe, more dangerous to the public over a relatively short period of time." With that in mind, the court sentenced appellant to eight years in prison for aggravated arson and five years for tampering with evidence. The court ordered the sentences to be served consecutively for a total term of 13 years imprisonment. Judgment to that effect was entered January 31, 2002[5] and this appeal followed.
 I {¶ 11} Appellant argues in his first assignment of error that insufficient evidence exists to support the jury's guilty verdict for aggravated arson. Specifically, appellant contends that insufficient evidence exists to support the jury's finding that he knowingly set the fire.[6] We disagree.
 {¶ 12} When a court of review examines a challenge to the sufficiency of evidence, the court must construe the evidence in a light most favorable to the prosecution. See State v. Hill, 75 Ohio St.3d 195,205, 1996-Ohio-222, 661 N.E.2d 1068; State v. Grant, 67 Ohio St.3d 465,477, 1993-Ohio-171, 620 N.E.2d 50; State v. Rojas, 64 Ohio St.3d 131,139, 1992-Ohio-110, 592 N.E.2d 1376. The relevant inquiry is whether a jury considering that evidence could find the essential elements of the crime beyond a reasonable doubt. See State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751, 772 N.E.2d 81, at ¶ 78; States v. Jones,91 Ohio St.3d 335, 345, 2001-Ohio-57, 744 N.E.2d 1163; State v. Loza,71 Ohio St.3d 61, 68, 1994-Ohio-409, 641 N.E.2d 1082. Convictions will not be overturned for insufficient evidence unless reasonable minds could not reach the conclusion reached by the trier of fact. See State v.Tibbetts, 92 Ohio St.3d 146, 162, 2001-Ohio-132, 749 N.E.2d 226; Statev. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749. With this standard in mind, we turn our attention to the evidence adduced below.
 {¶ 13} At trial both Chief Drew and Kenneth Crawford noted that appellant admitted to them that he was at the apartment building shortly before it caught fire. Appellant also told them that he left the scene sometime between 6:30 and 7 AM. We note that McArthur Police Dept. Sgt. Tony Wood was alerted to the fire at 7:16 AM by a passing motorist. Kenneth Crawford opined that the fire probably burned 20 to 30 minutes before it was discovered. Thus, appellant left the scene about the time that the fire began.[7] Additionally, appellant was part of a group of revelers that consumed alcohol the previous night at the Hotel McArthur. Evidence established that several of them were intoxicated and were "passed out" when the fire was discovered.
 {¶ 14} Other incriminating evidence included appellant's wallet, found underneath the decedent's body, and appellant's butane cigarette lighter. These items belonged to appellant and the jury could reasonably infer that appellant was in the decedent's apartment. Additionally, Jerry Wells, one of appellant's friends, testified that appellant called him from jail several days after the incident. When Wells asked appellant about the wallet, appellant stated that the decedent "wouldn't steal another fuckin [sic] billfold of mine."
 {¶ 15} We recognize that the evidence adduced at trial was largely circumstantial. We note, however, that the Ohio Supreme Court has held that circumstantial and direct evidence inherently possess the same probative value. See e.g. State v. Biros, 78 Ohio St.3d 426, 447,1997-Ohio-204, 678 N.E.2d 891; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph one of the syllabus. Thus, after our review of the record, we conclude that sufficient evidence exists to support the jury's finding that appellant knowingly set the fire.
 {¶ 16} Accordingly, we find that appellant's first assignment of error is without merit and it is hereby overruled.
 II {¶ 17} In his second assignment of error, appellant posits that even if sufficient evidence exists to support a guilty verdict on the aggravated arson charge, the jury's verdict is nevertheless against the manifest weight of the evidence. The gist of this argument is that although appellant's wallet was found beneath the decedent's body, that fact "does not place him in the room." Indeed, appellant concludes, "[t]here is no evidence that places him in the room on the morning in question."
 {¶ 18} As we noted above, circumstantial evidence adduced at trial, if believed, placed appellant at the scene. Appellant's wallet found on the bed where the fire originated is one such piece of evidence. Appellant's butane cigarette lighter is another. The inference that the trier of fact may properly draw from the presence of the wallet and the lighter is that appellant was at the scene.
 {¶ 19} Appellant also points to Ginger McKinney's testimony that the decedent had previously expressed a desire to burn the apartment building. The jury heard this testimony, as well as other evidence to suggest alternative origins for the fire. We note that the weight of evidence and the credibility of witnesses are issues to be determined by the trier of fact. See State v. Dye, 82 Ohio St.3d 323, 329,1998-Ohio-234, 695 N.E.2d 763; State v. Frazier, 73 Ohio St.3d 323, 339,1995-Ohio-235, 652 N.E.2d 1000; State v. Williams, 73 Ohio St.3d 153,165, 1995-Ohio-275, 652 N.E.2d 721. A jury is free to believe all, part or none of the testimony of each witness who appears before it. See Statev. Long (1998), 127 Ohio App.3d 328, 335, 713 N.E.2d 1; State v. Nichols
(1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144. Obviously, the jury in the case sub judice afforded little weight or significance to McKinney's testimony that the decedent wanted to burn down the building. This was well within its province.
 {¶ 20} In the end, a conviction cannot be reversed as being against the manifest weight of the evidence unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Earle (1997), 120 Ohio App.3d 457, 473,698 N.E.2d 440; State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814; State v. Davis (1988), 49 Ohio App.3d 109, 113,550 N.E.2d 966. Having carefully reviewed the lengthy trial transcript of these proceedings, we cannot conclude that the jury lost its way.
 {¶ 21} Accordingly, based upon the foregoing reasons we overrule appellant's second assignment of error.
 III {¶ 22} In his third and fourth assignments of error, appellant raises similar issues concerning certain evidence admitted at trial. This evidence consisted of appellant's prior arson conviction and the fact that appellant was "on judicial release" when he committed the offenses at issue in this case. We will jointly consider appellant's third and fourth assignments of error.[8]
 {¶ 23} Count one of the indictment in this case charged appellant with aggravated murder in violation of R.C. 2903.01(D). This statute provides that no person who is under "detention" as a result of having been found guilty of a felony shall purposely cause the death of another. For purposes of this statute, "detention" includes supervision by the department of rehabilitation and correction on any type of release from a state correctional institution. Id. at (G)(1); R.C. 2921.01(E). Therefore, in order to prove this particular element of the aggravated murder charge, the prosecution had to prove that appellant committed the offense while on judicial release from the previous arson conviction.
 {¶ 24} On December 10, 2001, appellant filed a motion in limine to exclude evidence of his prior arson conviction. He also offered to stipulate that he was under the supervision of the Adult Parole Authority at the time the present offenses were committed. We find no indication in the record that the court ruled on appellant's motion, but we presume it was overruled.[9] Apparently, the prosecution did not agree with appellant's proposal to stipulate to those various facts. At trial, Krista Lyons of the Ohio Adult Parole Authority testified that appellant had a previous arson conviction and that he was on judicial release at the time of the fire at issue in this case. The trial court admitted into evidence copies of appellant's conviction and judicial release. Appellant asserts that the trial court erred by admitting this evidence when he offered to stipulate to his previous conviction and judicial release.
 {¶ 25} Under R.C. 2903.02(A), a murder occurs when someone purposely causes the death of another. Under R.C. 2903.01(D), aggravated murder occurs when someone under detention purposely causes the death of another. Thus, the element of "detention," and the previous felony conviction for which that detention was imposed, elevates the crime of murder to the crime of aggravated murder. When a prior conviction elevates the degree of an offense, the prior conviction is an essential element of the subsequent offense that must be alleged and proved as a matter of fact by the prosecution. See State v. Allen (1987),29 Ohio St.3d 53, 55, 506 N.E.2d 199; State v. Henderson (1979),58 Ohio St.2d 171, 173, 389 N.E.2d 494; State v. Gordon (1971),28 Ohio St.2d 45, 48, 276 N.E.2d 243. Additionally, in degree-elevating situations, such evidence is admissible notwithstanding a defense offer to stipulate to the prior conviction. State v. Blazavich (Jun. 2, 1997), Washington App. No. 96CA9; also see State v. Tolle (Apr. 23, 1991), Highland App. No. 755; State v. Harris (Dec. 18, 1995), Knox App. No. 95-8.[10] We note that some courts have found reversible error when trial courts have allowed the defendant to stipulate to the existence of a prior conviction (thus depriving the prosecution of the opportunity to prove the prior conviction as an element of the subject offense). See e.g. State v. Morgan (Nov. 8, 2001), Cuyahoga App. No. 79153; State v.Flasck (Dec. 29, 2000), Trumbull App. No. 99-T-0173. For these reasons, we find no error in the trial court's decision to allow evidence of appellant's prior conviction and evidence of appellant's judicial release to be admitted into evidence and presented to the jury.
 {¶ 26} We further note that appellant did not properly object to this particular evidence. Thus, appellant waived the issue for purposes of appeal.[11] It is axiomatic that appellate courts need not consider any error which could have been called, but was not called, to the attention of the trial court when such error could have been avoided or corrected. Gordon, supra at paragraph two of the syllabus; State v.Nields, 93 Ohio St.3d 6, 12, 2001-Ohio-1291, 752 N.E.2d 859; State v.Joseph, 73 Ohio St.3d 450, 455, 1995-Ohio-288, 653 N.E.2d 285. Appellant's failure to object to the introduction of certain evidence waives all but plain error. State v. Loza (1994), 71 Ohio St.3d 61, 75,641 N.E.2d 1082. Appellant does not argue in his brief that this was plain error and, in light of our foregoing discussion, we are obviously not persuaded that plain error exists.[12]
 {¶ 27} Appellant further asserts that in light of the fact that his attorney did not object to introduction of this evidence, he received ineffective assistance of counsel. We are not persuaded.
 {¶ 28} In order to obtain the reversal of a conviction on grounds of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial. SeeStrickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693,104 S.Ct. 2052, 2064; also see State v. Issa (2001), 93 Ohio St.3d 49,67, 752 N.E.2d 904; State v. Goff (1998), 82 Ohio St.3d 123, 139,694 N.E.2d 916. Both prongs of the Strickland test need not be analyzed if the ineffective assistance claim can be resolved under one prong. SeeState v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52. Thus, if a claim may be disposed of on grounds of lack of sufficient prejudice, that course should be followed. See Loza, supra at 83.
 {¶ 29} In the instant case, appellant cannot demonstrate prejudice. Assuming arguendo that counsel was deficient for the failure to object to the admission of evidence of appellant's prior arson conviction, appellant cannot show that such inaction prejudiced him and denied him a fair trial. As aforesaid, under the guiding decisional cases on this issue, we believe that the trial court properly admitted such evidence to establish the elements of aggravated murder under R.C.2903.01(D).
 {¶ 30} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third and fourth assignments of error.
 IV {¶ 31} Appellant's fifth assignment of error involves the trial court's instructions to the jury when the jury was deadlocked in its deliberations. The court instructed the jury as follows:
 {¶ 32} "So at this time I am going to go ahead and give some additional instruction toward encouraging you to consider your deliberations with with [sic] the goal obviously of reaching a verdict as to each of the five counts that have been submitted to you. I should point out that in a large proportion of cases absolute certainty cannot be attained or expected. And although the verdict must reflect the verdict of each of you individually and not near (inaudible) in conclusion of the other jurors, each question submitted to you should be examined with proper regard and deference to the opinion of others. It is desirable, it is important that the case be decided. You, and when I say you I mean this jury, was selected in the same manner, from the same general group that any other jury would be selected from in the future. The Court has no reason to believed, and indeed does not believe, that another jury would be any more capable, any impartial, or any more intelligent than the jury that is seated here today and this evening. And so there is and and [sic] that being the case, there is no reason to believe also that more or clearer evidence will be produced by either the state or by the defendant at another time. You took, as a part of your oath you will recall, and I will remind you that it is your duty to decide the case if you can conscientiously do so. You should listen to one another's opinions, I'm not suggesting that you have not, you probably have, the Court is aware how long you have been deliberating and we appreciate that effort. It is appropriate. It is an important case. Nonetheless, I'll say it again because its [sic] the essence of reaching an agreement, it is your duty to decide the opinions with the disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced that your position is erroneous. If there is a disagreement, all jurors, I repeat all jurors should reexamine their positions giving that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable considering that it is not shared by others equally (inaudible) who have heard the same evidence and with the same desire to arrive at the truth and under the same oath.Likewise, jurors for conviction should ask themselves whether they mightnot reasonably doubt the correctness of the judgment not concurred in byall other jurors. It is conceivable, of course, that after a reasonablelength of time, honest difference of opinion will would [sic] make itimpossible to reach a verdict. The Court understands that. When thatcondition exists you may consider whether further further [sic]deliberations will serve any purpose or not. But if you decide that youcannot agree and that further deliberations will not serve a usefulpurpose, you may ask to be returned to the Courtroom and report that factto the Court. But there if there is a possibility of reaching a verdict you should continue your deliberations. And as I said, the case it is desirable that it be decided. Its desirable that it be decided for the State of Ohio, for Mr. Mulhern the defendant, and because that's that's [sic] the goal of the jury, the duty of the jury is to decide and render a verdict upon and I as I mentioned in response to your first question, there are five counts. That is to say, five separate charges that have been submitted to you for consideration and to reach verdicts. Each of those is a separate charge to be considered separately, considering the evidence that applies to each of those charges. And I would encourage you and remind you of that again. So at this time, the Court is going to instruct that you would continue your deliberations. The Court hopes that the additional instructions provide some further support to work at longer and see if you can, after those additional deliberations, reach unanimous verdicts on each of the five charges which have been submitted to you. And because it is important, very important, that that [sic] be done and because it is so desirable, the Court at this time will instruct you to further deliberate, as I said a moment ago and that will conclude my remarks my instructions at this point." (Emphasis added.)
 {¶ 33} Appellant argues that the court erred by giving these instructions for two reasons. First, appellant contends that this charge deviated from the Ohio Supreme Court's approved charge to a deadlocked jury. Second, appellant claims that this charge led to "compromise" verdicts which are inconsistent with one another. We address each of these arguments individually.[13]
 {¶ 34} In State v. Howard (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, at paragraph two of the syllabus, the Ohio Supreme Court approved the following instructions to deadlocked jurors:
 {¶ 35} "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."
 {¶ 36} The question before the Howard court was whether to adopt the "dynamite" charge approved by the United States Supreme Court inAllen v. State (1896), 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154, for use with a deadlocked jury. After a review of decisions from other jurisdictions who have abandoned the "dynamite" charge, as well as a review of critical scholarly articles, the Ohio Supreme Court rejected the "dynamite" charge for Ohio and, instead, approved the instructions set forth in the second syllabus paragraph. The Court's decision turned on two primary criticisms of Allen. First, the Court noted that theAllen charge had a potentially coercive impact because it advised the jury "that a decision must be reached, thereby depriving either the state or the defendant of the possibility of a hung jury and a mistrial."Howard, supra at 22. The Court also expressed concern that the Allen
charge is unduly coercive to jurors in the minority "because it, in effect, orders those members to reevaluate their position in light of the fact that fellow jurors are unswayed, but does not require jurors in the majority to undertake a corresponding reevaluation." Id. Thus, the effect of the Allen charge was to place the authority of the trial judge behind the position of the majority and give the appearance that a jury verdict should be one of majority rule rather than unanimity. Id.
 {¶ 37} In the case sub judice, we believe that the trial court's instruction is substantially similar to the approved Howard charge. As appellant points out in his brief, however, the court included additional language beyond that which was explicitly approved by the Ohio Supreme Court. Thus, the pivotal question is whether the additional language ran afoul of the Supreme Court's directive in Howard. For the following reasons, we conclude that it did not.
 {¶ 38} We acknowledge that the better practice is to give the precise Howard instruction as approved by the Ohio Supreme Court. SeeState v. Lopez (1993), 90 Ohio App.3d 566, 582, 630 N.E.2d 32; State v.Willis (Jul. 29, 1996), Stark App. No. 95CA202. However, as aptly noted by the Eighth District Court of Appeals, the Howard charge is not an absolute mandate for trial courts to follow, but rather a suggestion.State v. Williams (Jul. 5, 1995), Cuyahoga App. No. 66864.[14] If a court deviates from the Howard language, the court must ensure that the charge satisfies the concerns of the Howard opinion. In particular, a court must ensure that the instruction (1) encourages a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial, and (2) calls for all jurors to reevaluate their opinions, not just the minority members. Id.; also see State v. Matyas, Jefferson App. No. 98-JE-14, 2000-Ohio-2671;State v. McClendon (Jan. 20, 1998), Stark App. No. 97CA71; State v.Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338.
 {¶ 39} After a thorough review of the trial court's jury instructions in this case, we conclude that the court's charge complied with Howard. The court stressed that a unanimous verdict should be reached, but only if jurors could conscientiously do so. Moreover, the court expressly left open the possibility that a unanimous verdict could not be reached and instructed the jury that in such event, they could report their continued deadlock to the court. The court also stressed that both the jurors voting for acquittal and the jurors voting for conviction should reexamine their respective positions. Therefore, we believe that the trial court's instructions addressed the Ohio Supreme Court's dual concerns in Howard.
 {¶ 40} Appellant counters that by continually reemphasizing the importance and desirability of reaching a verdict, the trial court subtly induced the jury to decide the case at all costs, even if the costs included "compromise" verdicts. We are not persuaded. The reason the court stressed the importance and desirability in reaching a verdict in this case is because it is important and desirable to reach a verdict in every case. This is a legitimate policy concern to communicate to a jury. Moreover, we do not believe such comments could have led the jury to conclude they were required to reach a verdict at any cost. The court explicitly informed the jury that if they could not reach a verdict after further deliberation, they could report that impasse to the court.
 {¶ 41} Appellant also argues that by stressing the existence of five separate counts, and by stating that each count had to be considered separately, the trial court itself suggested the possibility of a "compromise verdict." We disagree. We believe that the court stated the obvious — i.e. five counts needed to be considered and each count had to be decided separately. We also point out that random sentences taken from jury instructions, and not considered in their proper context, can be construed to support virtually any argument. However, jury instructions must be viewed in their totality. State v. Speakman, Pickaway App. No. 00CA35, 2001-Ohio-2437; State v. Ross (Oct. 12, 2000), Cuyahoga App. No. 77126; State v. Neptune (Apr. 21, 2000), Athens App. No. 99CA25. As we noted previously, after our review of these instructions as a whole, we are satisfied that the trial court complied with the spirit, if not the letter, of Howard.
 {¶ 42} We also disagree with appellant's characterization of the jury verdicts as "compromise" verdicts, which are "inconsistent with one another." Apparently, the jury acquitted appellant of murder because no evidence was introduced to pinpoint the decedent's cause of death. Dr. Fardal and Calvin McGuire both testified that the levels of carbon monoxide and cyanide in the decedent's system were lower than would be expected for someone who died in a fire, thus indicating that she died before the fire started. That said, Dr. Fardal still could not determine the decedent's cause of death. Thus, the jury must have concluded that insufficient evidence existed to prove a murder, let alone to prove that appellant was the murderer.
 {¶ 43} The jury's verdict is not inconsistent with its finding that appellant set the fire, however. The jury could have reasonably concluded that (1) appellant set the fire; and (2) an acquittal on the murder charge was appropriate in light of the lack of evidence regarding the decedent's cause of death. As we previously discussed, circumstantial evidence proved that appellant was in the decedent's apartment prior to the fire. Furthermore, the jury could conclude that appellant's departure from the apartment building at the approximate time the fire began, while other people remained in the building, indicates that appellant left the building in order to avoid the fire or to avoid detection. Thus, we believe that the verdicts that acquitted appellant of aggravated murder, but found appellant guilty of aggravated arson, are not inconsistent.
 {¶ 44} Appellant further contends that it is inconsistent to find him guilty of one charge of aggravated arson, but to acquit him of the other two charges. Again, we disagree. First, we note that different elements appear in these charges. Count four of the indictment charged appellant with aggravated arson in violation of R.C. 2909.02(A)(2), which involves knowingly setting a fire and causing harm to a "physical structure." Counts two and three of the indictment charged him with aggravated arson in violation of R.C. 2909.02(A)(1), which involves knowingly setting a fire and creating a substantial risk of serious physical harm to another person.[15] After our review of the evidence, we believe that the jury could have found that appellant started the fire and caused harm to the building, but did not, at the time the fire was detected and extinguished, create a substantial risk of serious injury to other people in other parts of the building. The evidence adduced at trial indicates that the fire damage was, to a large extent, contained in the decedent's bedroom. The fire did not spread to the rest of the decedent's apartment or to other parts of the building. Thus, the trier of fact could conclude that a substantial risk of serious harm to the other occupants had not yet occurred, while, at the same time, could find that harm occurred to the building itself.
 {¶ 45} Finally, appellant asserts that it is inconsistent for the jury to convict him of tampering with evidence (i.e. the decedent's body), but at the same time acquit him of the actual murder. Again, we disagree.[16] Unfortunately, it may never be known how Jonna Hollingshead died. What is known, however, is that parts of her body were consumed in a fire that began on her bed. The jury found that appellant started the fire. Circumstantial evidence supports that finding. The act of burning the body impeded an investigation, including the cause of the decedent's death. Therefore, we believe that the jury could find appellant guilty of both the aggravated arson charge and the tampering with evidence charge, even though it found him not guilty of the aggravated murder charge.
 {¶ 46} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fifth assignment of error.
 V {¶ 47} Appellant argues in his sixth assignment of error that the trial court erred when it (1) imposed maximum sentences for aggravated arson and tampering with evidence; and (2) ordered that the sentences be served consecutive to one another.[17] We disagree.
 {¶ 48} Our analysis begins with R.C. 2929.14(C) which prohibits trial courts from imposing maximum prison sentences unless the offender is determined to fall into one of four classifications. State v. Lovely
(Mar. 21, 2001), Scioto App. No. 00CA2721; State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605; State v. Kauff (Nov. 9, 1998), Meigs App. No. 97CA13. The classifications include offenders who (1) commit the worst form of the offense; (2) pose the greatest likelihood of committing future crimes; (3) are certain major drug dealers; and (4) are certain repeat violent offenders. R.C. 2929.14(C); also see State v. Borders
(Aug. 7, 2000), Scioto App. No. 00CA2696; State v. Riggs (Sep. 13, 1999), Washington App. No. 98CA39; State v. Goff (Jun. 30, 1999), Washington App. No. 98CA30. When a court imposes a maximum sentence, the court must state its reasons on the record at the sentencing hearing. R.C. 2929.19(B)(2)(d); also see State v. Wood, Scioto App. No. 01CA2779, 2002-Ohio-412; State v. Lenegar (Feb. 3, 1999), Vinton App. No. 99CA521;State v. Patterson (Sep. 21, 1998), Washington App. No. 97CA28.
 {¶ 49} Our review of the record in the instant cases convinces us that the trial court adequately complied with these requirements when it imposed the maximum prison sentences. The sentencing hearing transcript reveals, in part, the following explanation for the court's decision:
 {¶ 50} "The Court further finds that the maximum sentence for tampering with evidence is fair and just. The Court does find that he committed the worse form of the offense as evidenced by the burning of the body of Jonna Hollingshead; by tampering with evidence of a homicide investigation; by setting the fire to a to an apartment, a residential structure; and by creating the potential danger to the safety and health of two other persons on the same floor of the same building and that floor actually containing only two apartments. The Court finds that the maximum sentence for aggravated arson is fair and just because Mulhern committed the worse form of the offense by setting fire to a residential structure, in particular, the apartment of Jonna Hollingshead; by burning the body of Jonna Hollingshead; and by creating potential danger to the safety and health of two other persons on the same floor of the same building. Court further finds that the sentences are fair and just because Mr. Mulhern poses the greatest likelihood of recidivism as indicated by the following facts. As already referred to, Mulhern has a criminal record of the misdemeanor offense of domestic violence, a separate felony offense of arson. As suggested by the State, criminal behavior has become increasingly severe, more dangerous to the public over a relatively short period of time. He failed to comply with the terms and conditions of a misdemeanor probation in the domestic violence conviction as referenced by sentencing exhibits numbers 1 through 6. He failed to comply with the terms and conditions of the community control when granted judicial release from prison for the earlier arson conviction. And nine days after being released from the SEPTA Correctional Facility program, while under Court order community control sanctions, committed the offenses for which he is now being sentenced."
 {¶ 51} After our review of the trial court's soliloquy it is obvious that the court found that appellant had committed the "worst form" of these offenses and that appellant posed the greatest likelihood of committing future crimes. We also note that the court included its findings in January 31, 2002 sentencing entry. These findings are amply supported by evidence in the record. Appellant not only set fire to an occupied structure, but set fire to an apartment building where, as the court aptly noted, danger existed to other apartments, to other tenants, and to other structures in the community. Moreover, appellant committed this offense while he was on community control for a prior arson conviction. This suggests that appellant has a propensity for starting fires and is likely to commit similar offenses in the future. These factors are sufficient to justify the imposition of maximum sentences under to R.C. 2929.14(C).
 {¶ 52} As for the two consecutive sentences, we turn to the provisions of R.C. 2929.14(E)(4) which provides as follows:
 {¶ 53} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 54} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 55} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 56} "(c)The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 57} This statute sets out a "tri-partite procedure" for imposing consecutive prison sentences: first, a trial court must find that consecutive sentences are "necessary" to protect the public or to punish the offender; second, a court must find that the proposed consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" that the offender poses; and third, a court must find the existence of one of the three enumerated circumstances in sub-parts (a) through (c). State v. Willey, Washington App. No. 01CA37, 2002-Ohio-2849, at ¶ 21; State v. Lovely, Scioto App. No. 00CA2721, 2001-Ohio-2440; State v. Haugh (Jan. 24, 2000), Washington App. No. 99CA28. Further, the trial court must make findings that explain its reasons for imposing consecutive sentences. R.C.2929.19(B)(2)(c).
 {¶ 58} After our review of the record in the case sub judice, we are convinced that the trial court considered the requisite criteria and made the predicate findings to impose consecutive sentences. The sentencing hearing transcript contains the following recitation:
 {¶ 59} "[The] Court appreciates your arguments, Mr. McGee, with respect to why the sentences should be concurrent rather than consecutive. You make a strong argument, but the Court respectfully disagrees and does find the consecutive sentences are appropriate and necessary in this case to protect the public from future crime and to punish the defendant. Court further finds that the consecutive sentences are not disproportionate to the seriousness of Mulhern's conduct and the danger that he poses to the public as indicated and supported by the facts, most of which I've already discussed. In particular, that he committed the worst form of the offenses of aggravated arson and tampering with evidence by burning the body of Jonna Hollingshead which was located in the apartment; by setting fire to a residential structure; by creating potential danger to the safety and health of two other persons on the same floor of the building. He has a criminal record, not only a misdemeanor but also the separate felony offense. That behavior has become increasingly severe and dangerous over a short period of time. He failed to comply with the terms and conditions of the misdemeanor probation for the domestic violence charge. Failed to comply with the terms and conditions of community control when granted judicial release from prison for the prior felony arson conviction. And as mentioned before, nine days after being released from the SEPTA Correctional Facility while under Court order community control sanctions committed the offenses for which he is now being sentenced."
 {¶ 60} The trial court included these findings in its January 31, 2002 sentencing entry. In determining that appellant committed the worst form of these offenses, and in observing that his criminal conduct was becoming increasingly more dangerous and severe, the court obviously held the opinion that consecutive sentences are necessary to protect the public and are not disproportionate to the seriousness of his conduct and/or the danger he posed to the public. The court also noted that these crimes were committed while appellant was on community control for a previous arson conviction. These findings are supported by the record and are sufficient to impose consecutive sentences under R.C. 2929.14(E)(4).
 {¶ 61} Appellant also argues that the trial court improperly based its sentencing decision on crimes for which he was not convicted. Specifically, he points to the court's references to "potential danger to the safety and health" of other people in the building. Appellant points out that he was acquitted on the other two arson charges and that those offenses should not have been considered in the court's sentencing decision.
 {¶ 62} We disagree with appellant's interpretation of those comments. In our view, the trial court was not focused on the charges for which appellant was acquitted, but rather the court referred to the hypothetical potential for harm had the fire gone unchecked. While appellant may have been acquitted of creating a "substantial risk of serious physical harm" to other people in the building, the fact remains that appellant's actions created a risk of danger to those people and to other people and structures in the community. We find nothing improper with the trial court's consideration of that factor. Although the evidence showed that the fire was contained in the decedent's bedroom, had the fire not been timely discovered, and thus allowed to spread, it would have certainly created a substantial risk of harm. This is the "potential danger" to which the trial court referred in making its decision.
 {¶ 63} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sixth assignment of error.
JUDGMENT AFFIRMED.
Harsha, J.: Dissents with dissenting opinion.
Kline, J.: Concurs in Judgment Opinion.
[2] Churchwell and Frank both became involved in this case at the behest of Westfield Insurance Companies. Westfield insured the building where the fire occurred.
[3] McGuire listed the following drugs that he found in the decedent's body: "[a] muscle relaxant, sedative, Butalbital, Cyclobenzaprine, Acetaminophen, pain medication over the counter, Diazepine which is a benzodiazepine tranquilizer, Propoxyphene which is pain medication and some thinignoids THC." McGuire explained that "THC" is marijuana.
[4] The record does not disclose what became of the gross abuse of a corpse charge. The prosecution represents in its brief that this charge was dismissed prior to swearing in the jury. Although nothing in the transcript or the original papers shows that this was the case, we presume that is what happened.
[5] We note that the December 19, 2001 judgment of conviction and the January 31, 2002 sentencing entry both incorrectly state that appellant was found guilty of aggravated arson in violation of section (A)(1) of R.C. 2909.02. A review of the jury verdicts reveals that he was found guilty on count four of the indictment which charged aggravated arson in violation of section (A)(2) of R.C. 2909.02.
[6] The aggravated arson provisions of R.C. 2909.02(A)(2) state that no person, by means of fire or explosion, shall knowingly cause physical harm to any occupied structure.
[7] Roberta Nicholson testified that appellant arrived at her home on the morning of June 2, 2001 at approximately 7:15 AM. It is a 25-30 minute walk from the Hotel McArthur to her house. If appellant walked to Nicholson's home, he would have left the apartment building at the approximate time that the fire started.
[8] By way of background information, on October 6, 2000, appellant pled guilty to an unrelated arson charge. He received a sentence of seventeen months in prison. On December 18, 2000, appellant was granted judicial release with five years of "supervised community control."
[9] If a trial court does not explicitly decide a motion, a reviewing court will assume that the trial court overruled the motion. See Takacsv. Baldwin (1995), 106 Ohio App.3d 196, 209, 665 N.E.2d 736; also seeState v. Todd (Aug. 9, 1996), Pickaway App. No. 96CA01; State v. Seymour
(Nov. 9, 1993), Pickaway App. No. 90CA38.
[10] The author of this opinion has previously noted in a concurring opinion in Blazavich that "[e]vidence of a prior conviction is inherently inflammatory and prejudicial. Obviously, a jury may be inclined to return a guilty verdict based upon the defendant's previous conviction rather than solely upon the strength of the evidence in the pending case. Thus, a defendant should be permitted to request that the trial court, in a separate hearing outside the presence of the jury, determine the existence of the defendant's prior conviction. This option should be available to a defendant in situations when the prior conviction elevates the degree of the offense." Blazavich, supra (Abele, J. Concurring). Nevertheless, a long line of Ohio Supreme Court and appellate court cases have held that such evidence is admissible. This court is bound and obligated to apply that precedent.
[11] The trial court's denial of the motion in limine did not preserve any potential error on this issue. Appellate courts do not directly review in limine rulings. See State v. White (Oct. 21, 1996), Gallia App. No. 95CA08. Those rulings are tentative and interlocutory and made by a court only in anticipation of its actual ruling on evidentiary issues at trial. See McCabe/Marra Co. v. Dover (1995), 100 Ohio App.3d 139,160, 625 N.E.2d 236; Collins v. Storer Communications, Inc. (1989),65 Ohio App.3d 443, 446, 584 N.E.2d 766. A court is, of course, free to change its view on the tentative or interlocutory rulings prior to the entry of the final judgment. Thus, the grant or denial of a motion in limine does not preserve error for review. See Hill, supra at 202-203. In order to preserve an error for appeal, the evidence must be presented at trial, and then a proper objection be made. See State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, at paragraph three of the syllabus;State v. Grubb (1986), 28 Ohio St.3d 199, 503 N.E.2d 142, at paragraph two of the syllabus. An appellate court then reviews the correctness of the trial court's ruling on the objection, rather than the ruling in limine. See White, supra; State v. Seymour, Hocking App. No. 01CA6, 2001-Ohio-2561; Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08.
[12] Notice of plain error under Crim.R. 52(B) is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68, 759 N.E.2d 1240; State v. Hill, 92 Ohio St.3d 191, 196,2001-Ohio-141, 749 N.E.2d 274; State v. Landrum (1990), 53 Ohio St.3d 107,111, 555 N.E.2d 710. The plain error rule should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. State v. Jackson, 92 Ohio St.3d 436, 438,2001-Ohio-1266, 751 N.E.2d 946; State v. Sanders, 92 Ohio St.3d 245,263, 2001-Ohio-189, 750 N.E.2d 90; State v. Underwood (1983),3 Ohio St.3d 12, 444 N.E.2d 1332, at the syllabus. Given the incriminating evidence against appellant, we cannot conclude that the outcome of the trial would have been otherwise had the jury not heard of appellant's prior arson conviction.
[13] We note that it does not appear that appellant objected to these jury instructions. Thus, appellant waived all but plain error. See Crim.R. 30(A); also see State v. Hanna, 95 Ohio St.3d 285,2002-Ohio-2221, 767 N.E.2d 678, at ¶ 56; State v. Lamar,95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 103. However, as we note above in our discussion under this assignment of error and for the reasons set forth in this opinion, we find no error in the trial court's charge, let alone plain error.
[14] That the Ohio Supreme Court does not require strict use of theHoward instruction can be seen in that portion of the opinion where the Court opts for its own instruction over one proposed by the American Bar Association. The Court noted that "we do not believe the ABA standard is the answer" though "we would not disapprove of its use."42 Ohio St.3d at 25.
[15] Count two of the indictment alleged a substantial risk of physical harm to Gerra Seitz Coleman. Count three alleged a substantial risk of harm to Robert Frankum (who lived in the apartment next door to the decedent). Frankum and Coleman were both in the building at the time the fire began.
[16] Tampering with evidence under R.C. 2921.12(A)(1) occurs when a person, knowing that an official investigation is likely to be instituted, alters or destroys a "thing" with purpose to impair its value or availability as evidence in such investigation.
[17] Appellant's aggravated arson conviction is a second degree felony for which he received the maximum possible prison term of eight years. See R.C. 2909.02(B)(3) R.C. 2929.14(A)(2). Appellant's tampering with evidence conviction is a third degree felony for which he received the maximum possible prison term of five years. See R.C. 2921.12(B) R.C. 2929.14(A)(3).